UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-60714-CIV-COHN/OTAZO-REYES

MENTORA EUBANKS, and
ARTHUR N. HENSON, II, D.O.,

      Plaintiffs,

v.

CAROL FREBURGER,

      Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS CAUSE** is before the Court on Defendant Carol Freburger's Motion for

Summary Judgment [DE 62] ("Motion").  The Court has considered the Motion,

Plaintiffs' Response [DE 68], Defendant's Reply [DE 72], the record, and is otherwise

fully advised in the premises.

## I. BACKGROUND

In 2005, Plaintiff Mentora Eubanks owned Southeastern Wellness Institute

("SWI"), a Florida medical clinic licensed to dispense narcotics in Fort Lauderdale,

Florida.  See Compl. [DE 1] ¶ 3.  Plaintiff Arthur N. Henson, II, D.O., was the treating

physician at the clinic.  See id.  That year, the Florida Attorney General's Office, through

the Medicaid Fraud Control Unit, instituted a criminal investigation of Plaintiffs.

See Compl. ¶¶ 4, 9.  At the time, Defendant Carol Freburger was a Lieutenant at the

Medicaid Fraud Control Unit.  See id. ¶ 5.

Plaintiffs allege that, as part of the criminal investigation, Defendant "coerced

false criminal affidavits from Medicaid patients by forcing them to lie in their criminal affidavits under threat of losing their Medicaid benefits."  <u>Id.</u> ¶ 10.  The false information allegedly included "accusing the Plaintiffs of diagnosing and prescribing narcotic pain killers without any physical exam and selling the narcotic pain killers without a license." <u>Id.</u>  The Complaint alleges that warrants were issued for Plaintiffs' arrests based on Defendant's falsified arrest affidavit, and Plaintiffs were ultimately arrested.  <u>See id.</u> Plaintiffs also argue that Defendant knew or should have known, prior to Plaintiffs' arrests, of the alleged victims' chronic medical conditions as described in their medical files.  <u>See</u> Mem. of Law in Opp'n to Mot. For Summ. J. [DE 68] at 8-9.

On June 8, 2005, the Office of the Attorney General issued a press release announcing that Plaintiffs had been arrested on charges of "providing prescriptions for controlled drugs in exchange for cash."  <u>See</u> Press Release, Ex. A to Compl. [DE 6] ("Press Release"); <u>see also</u> Compl. ¶ 11.  The press release accused Plaintiffs of "writing prescriptions for a controlled substance for monetary benefit," "operating a pharmacy without a license and/or licensed practitioner," "dispensing prescriptions without a licensed pharmacist or dispensing practitioner," and "[p]rescribing highly addictive and often abused drugs in exchange for cash . . . [without giving] any physical exams to justify the prescriptions."  Press Release; Compl. ¶ 11.  The Complaint alleges that Defendant and other state officials knew the allegations in the press release to be false, but published the press release anyway "to intimidate and damage the Plaintiffs, influence the jury pool, and enhance the public perception of the [Defendant] and the Office of the Attorney General."  Compl. ¶ 12.  In February 2008, after a five-day jury trial, both Plaintiffs were ultimately acquitted.  <u>Id.</u> ¶ 13.

2

On April 4, 2011, Plaintiffs filed this action against Defendant in her individual and official capacities.[1]  See Compl.  The Complaint brings the following claims: "due process" (Counts I and II)[2], defamation (Counts III, IV, IX, and X)[3], "outrageous conduct" (Counts V and VI)[4], and malicious prosecution (Counts VII and VIII).  Id.  The Complaint alleges that, as a result of the arrest and prosecution, Plaintiff Eubanks was forced out of her business and Plaintiff Henson had to leave his medical practice.  See id.  Also, the Florida Department of Health suspended Henson's license, and the Agency for Health Care Administration terminated his Medicaid provider number.  See Press Release.

In the instant Motion, Defendant Carol Freburger moves for summary judgment on four grounds.  First, she argues that she is entitled to qualified immunity regarding Plaintiffs' § 1983 and malicious prosecution claims because Plaintiffs' arrests were supported by at least arguable probable cause.  Second, she contends that under Florida Statutes § 768.28, she is entitled to statutory immunity from Plaintiffs' state-law

---

[1]    Plaintiffs also named Defendants Andrea Anido, John Boals, and Charles Crist, Jr.  Anido was dismissed from this lawsuit without prejudice pursuant to Federal Rule of Civil Procedure 4(m) for Plaintiffs' failure to serve her.  See DE 28.  Boals and Crist were later dismissed pursuant to Federal of Civil Procedure 12(b)(6) for failure to state a claim for which relief can be granted.  See Order Grant. in Part and Den. in Part Mots. to Dismiss [DE 37] at 21-22.

[2]    The Court determined that these are essentially 42 U.S.C. § 1983 claims for unreasonable search or seizure in violation of the Fourth Amendment.  See Order Grant. in Part and Den. in Part Mots. to Dismiss at 10.

[3]    The Court dismissed the defamation claims as barred by the statute of limitations.  See Order Grant. in Part and Den. in Part Mots. to Dismiss at 15-17, 22.

[4]    The Court recognized these claims as alleging intentional infliction of emotional distress.  See Order Grant. in Part and Den. in Part Mots. to Dismiss at 15.

claims.  Third, she argues that Plaintiffs' claims for intentional infliction of emotional distress must fail because Plaintiffs' arrests were supported by probable cause.  Fourth, she asserts that Plaintiffs' malicious prosecution claim is barred because she consulted with attorneys before filing the arrest affidavit.  Plaintiffs oppose the Motion.

## II. SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56(a), the Court may grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The movant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  To discharge this burden, the movant must show that "there is an absence of evidence to support the non-moving party's case."  Id. at 325.

After the movant has met its burden, the burden of production shifts to the non-moving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [the Court may] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it."  Fed. R. Civ. P. 56(e)(3).

At the summary judgment stage, the Court's function is not to "weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In

4

making this determination, the Court must decide which issues are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  Id. at 248.

### III. ANALYSIS

This case turns on the issue of probable cause.  If Defendant had probable cause to arrest Plaintiffs, then Defendant will be entitled to qualified immunity and Plaintiffs' claims must fail.  As will be discussed below, there are no genuine issues of material fact with regard to the existence of probable cause.  Accordingly, the Court will grant the Motion.

### A. Standard for Qualified Immunity

Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known."[5]  Harlow v. Fitzgerald, 457 U.S. 800,

---

[5]     The Court notes that Plaintiffs are suing Defendant in both her individual and official capacities, without specifying which claims relate to which capacity.  See Compl.  Qualified immunity only goes to her individual liability.  See Brandon v. Holt, 469 U.S. 464, 472-73 (1985).  In their pleadings and the instant Motion, the parties have chosen to focus on Defendant's individual role.  However, the claims against her in her official role would likewise fail.  An officer suit is essentially a suit against the governmental entity.  See Kentucky v. Graham, 473 U.S. 159, 165 (1985).  A plaintiff may bring a claim against a governmental entity under § 1983 either by alleging that a policy or custom of the governmental entity caused the constitutional violation, or by alleging that an official with final policymaking authority for the governmental entity caused the violation.  See Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690-92 (1978).  Plaintiffs have alleged neither a policy or custom of any governmental entity, nor that Defendant had final policymaking authority for her unit or office.

818 (1982).  To invoke qualified immunity, the public official must establish that she was acting within the scope of her discretionary authority.  Bates v. Harvey, 518 F.3d 1233, 1242 (11th Cir. 2008).  The burden then shifts to the plaintiff to overcome the defense of qualified immunity.  Id.

"A government official proves that he acted within the purview of his discretionary authority by showing 'objective circumstances which would compel the conclusion that his actions were undertaken pursuant to the performance of his duties and within the scope of his authority.'"  Hutton v. Strickland, 919 F.2d 1531, 1537 (11th Cir. 1990) (quotations & citations omitted).  Actions such as investigating crimes and questioning witnesses fall within the scope of a law enforcement officer's discretionary authority.  See Riebsame v. Prince, 267 F. Supp. 2d 1225, 1237 (M.D. Fla. 2003), aff'd, 91 F. App'x 656 (11th Cir. 2004); see also Mears v. Brett McCulley, No. CV-09-S-2540-NE, 2012 WL 3030527, at *29 (N.D. Ala. July 19, 2012) ("Investigating crimes, conducting searches, and making arrests are legitimate job-related functions within the discretionary authority of police officers.").  Here, Defendant acted in her capacity as a Lieutenant at the Medicaid Fraud Control Unit of the Florida Attorney General's Office to investigate alleged wrongdoing by Plaintiffs and take affidavits from witnesses.  Therefore, Defendant has successfully established that she acted within the scope of her discretionary authority, and the burden shifts to Plaintiffs to overcome the qualified-immunity defense.  See Bates, 518 F.3d at 1242.

To overcome qualified immunity, Plaintiffs must satisfy a two-part test.  Saucier v. Katz, 533 U.S. 194, 201 (2001).  First, they must demonstrate that the facts alleged, taken in the light most favorable to Plaintiffs, show that the officer's conduct violated a

6

constitutional right.  Id.  Next, the Court must "determine 'whether, at the time of the incident, every objectively reasonable police officer would have realized the acts violated already clearly established federal law.'"  Davis v. Williams, 451 F.3d 759, 762 (11th Cir. 2006) (quoting Garrett v. Athens-Clarke County, 378 F.3d 1274, 1278-79 (11th Cir. 2004)).  Essentially, to meet their burden, Plaintiffs must prove both that there was a violation of a constitutional right and that the right was clearly established.

Here, Plaintiffs' claims are based on Defendant's alleged procuring of false witness affidavits and filing a false arrest affidavit, which led to the arrest and criminal prosecutions of Plaintiffs without probable cause.  "[I]t is clearly established that an arrest made without probable cause violates the Fourth Amendment."  Davis, 451 F.3d at 762 (citing Thornton v. City of Macon, 132 F.3d 1395, 1399 (11th Cir. 1998); Von Stein v. Brescher, 904 F.2d 572, 579 (11th Cir. 1990)); see also Mapp v. Ohio, 367 U.S. 643 (1961) (holding that the Fourth Amendment is made applicable to the states by the Fourteenth Amendment).  Therefore, at the summary judgment stage, Plaintiffs meet their burden if they show that there is a disputed issue of fact as to whether Defendant's actions led to Plaintiffs' arrests without probable cause.

### B. Defendant is Entitled to Qualified Immunity Because There Was Probable Cause to Arrest Plaintiffs

Probable cause exists when "law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime."  Case v. Eslinger, 555 F.3d 1317, 1327 (11th Cir. 2009) (quotations & citations omitted).  "[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such

activity." Illinois v. Gates, 462 U.S. 213, 245 n.13 (1983). However, a law enforcement officer will be entitled to qualified immunity where there was "'arguable probable cause,' that is, where 'reasonable officers in the same circumstances and possessing the same knowledge as the [Defendant] could have believed that probable cause existed to arrest' the plaintiff." Davis, 451 F.3d at 762 (quoting Kingsland v. City of Miami, 382 F.3d 1220, 1232 (11th Cir. 2004); Von Stein, 904 F.2d at 579.

In this case, Plaintiffs were arrested pursuant to an arrest warrant issued by a state court judge. See Arrest Aff. [DE 64-4]. Generally, "if facts supporting an arrest are placed before an independent intermediary such as a magistrate or grand jury, the intermediary's decision breaks the chain of causation for false arrest, insulating the initiating party." Drudge v. City of Kissimee, 581 F. Supp. 2d. 1176, 1186-87 (M.D. Fla. 2008) (quoting Taylor v. Gregg, 36 F.3d 453, 456 (5th Cir. 1994)). However, the magistrate's warrant will not protect the officer if the underlying arrest affidavit contained deliberate or reckless misstatements or omissions. Id. at 1187 (citing Miller v. Prince George's Cnty., 475 F.3d 621, 632 (4th Cir. 2007)). "With respect to omissions, 'reckless disregard' can be established by evidence that a police officer failed to 'inform the judicial officer of facts [she] knew would negate probable cause." Correa v. Torres, No. 6:10-cv-1328-Orl-28DAB, 2012 U.S. Dist. LEXIS 50617, at *13 (M.D. Fla. Apr. 11, 2012) (quoting Beauchamp v. City of Noblesville, 320 F.3d 733, 743 (7th Cir. 2003)). The officer's omissions must be material, that is, they must have been necessary to the issuing judge's finding of probable cause. Id. Furthermore, even if the officer did not intentionally omit material information, an officer will be charged with having had all information reasonably discoverable by an officer acting reasonably under the

8

circumstances.  See Kingsland, 382 F.3d at 1228.  "[O]fficers should not be permitted to turn a blind eye to exculpatory information that is available to them, and instead support their actions on selected facts they chose to focus upon."  Id.

Here, Plaintiffs Henson and Eubanks were arrested for alleged violations of Florida Statutes § 893.13(8)(a)(4), which makes it a crime for a prescribing practitioner to "[w]rite a prescription for a controlled substance for a patient . . . if the sole purpose of writing such prescription is to provide a monetary benefit to, or obtain a monetary benefit for, the prescribing practitioner."  See Arrest Aff. at 10, 13; Fla. Stat. § 893.13(8)(a)(4).  Eubanks was also charged with violation of Florida Statutes §§ 465.015(1) and 465.015(2)(b), which prohibit operating a pharmacy without a license and dispensing prescriptions without a license.  See Arrest Aff. at 13; Fla. Stat. §§ 465.015(1), 465.015(2)(b).  The Court will analyze the existence of probable cause as to each offense for which Plaintiffs were arrested.

### 1. There was probable cause to arrest Henson for violation of Florida Statutes § 893.13(8)(a)(4)

The charges brought against Henson under § 893.13(8)(a)(4) were related to his work at SWI from May 2002 through December 2002.  In the Arrest Affidavit, Defendant cited five categories of evidence to establish probable cause as to this offense.  First, she pointed to Henson's prior employment at the Latin Quarter clinic.  Henson's Medicaid provider number was terminated by the Agency for Health Care Administration in connection with his work at Latin Quarter, and the clinic's manager was arrested for Medicaid fraud.  See Arrest Aff. at 1-2.  Defendant also referred to an independent pain management specialist's negative evaluation of Henson's patient-

management record at Latin Quarter.  See id. at 3-4.

Second, Defendant pointed to the case of an unnamed Medicaid recipient who received pain medication prescriptions, purportedly for knee pain, from Henson at SWI. See id. at 4.  This individual had previously been convicted of selling prescription pain medication to an undercover police officer.  See id.  In the individual's medical records, her physician, Dr. Norman Moskowitz, had noted on March 7, 2002, that "no medication that she has been taking is indicated at this time."  On April 2, 2002, he noted that the MRI of her knee was normal.  See id.  Despite these indications in her record, Henson continued to prescribe her pain medication prescriptions up through August 2002. See id.

Third, Defendant cited to her interviews with two former SWI employees, Drs. Hugo Romeu and Aiden O'Rourke.  They both reported a lack of patient management protocols, including Eubanks's resistance to implementing drug testing or pill counting of patients.  See id. at 5-6.  Further, Dr. O'Rourke and one of the patient-witnesses both stated in their interviews with Defendant that the factor driving Eubanks' patient-management decisions was monetary gain.  See Def.'s Ex. J, Carpenter Aff. [DE 64-12]  ("Carpenter Aff.") at 35, 41, 111.

Fourth, and only briefly, Defendant mentioned that five of Plaintiffs' patients died of drug-related issues.  Over the course of the pre-arrest investigation, Defendant interviewed health personnel who had treated two of the deceased patients, S.R. and R.C.  S.R. received prescriptions for large amounts of pain medications from Henson starting in July 2002 up through S.R.'s death in November 2002.  S.R.'s physician, Dr. Barry Blumenthal, stated that S.R. was addicted to pain medications, had a history

of hospitalizations due to suicide attempts, and had Hepatitis C.  See Def.'s Ex. O,

Freburger Aff. [DE 64-20] ("Freburger Aff.") at 20-21.  Dr. Blumenthal told Defendant

that the Hydrocodone/APAP prescription that Henson gave to S.R. was clearly

contraindicated due to S.R.'s Hepatitis C.  See id. at 21.  Dr. Blumenthal concluded that

this prescription expedited S.R.'s liver failure.  See id.  Drs. Richard Seely and Denise

Canchola, psychiatrists who treated R.C., stated that

> If Dr. Henson had conducted even the most elementary health history
> report with [R.C.], he would have discovered a Hep C positive, drug
> addicted, high risk psychiatric patient who could not be responsible for
> any one, much less four of the drugs he was prescribed.  Dr. Henson
> either did not ask the right questions, making him incompetent, or he
> ignored the facts, making him a new kind of criminal.

See id. 19.

Fifth, Defendant referred to a series of interviews with six Medicaid recipients

who were Henson's patients at SWI.  According to the Arrest Affidavit, each patient

stated that Henson did not personally examine him or her, and that he wrote him or her

a prescription for large amounts of pain medication.  See Arrest Aff. at 7-10.

Furthermore, two patients claimed that Henson suggested doubling their dosages

without further examining them, and without their claiming to need a higher dosage.

See Def.'s Ex. I, Witness Statements [DE 64-11] at 11-12;  Carpenter Aff. at 11-12.

Plaintiffs respond, both in response to the instant Motion and in a subsequent

Motion to Strike [DE 76] (together, "Motions"), that Defendant either knew or should

have known that each of the six Medicaid patients was suffering from a chronic pain

condition.  In both Motions, the parties have disputed whether Defendant had

possession of the patients' medical files prior to Plaintiffs' arrests.  However, regardless

11

of whether Defendant actually knew of the patients' chronic pain issues — and chose

not to disclose them in the Arrest Affidavit — or merely failed to ask the patients if they

had such chronic conditions, this was an important oversight by Defendant.  The issue

of whether SWI's patients in fact suffered from chronic pain strikes the Court as an

obvious matter in which to inquire when building a case alleging Plaintiffs prescribed

pain medications *solely* for pecuniary gain.[6]

Nevertheless, in light of the other uncontroverted evidence, the Court finds that

Defendant's omission does not vitiate arguable probable cause.  Plaintiffs contend that

Defendant only had evidence that Plaintiffs prescribed excessive medication.  They

argue that Defendant ignored Florida Statutes § 893.13(8)(b), which provides that

> If the prescribing practitioner wrote a prescription . . . for which there was
> no medical necessity, or which was in excess of what was medically
> necessary to treat the patient  . . . that fact does not give rise to any
> presumption that the prescribing practitioner violated subparagraph (a)1,
> but may be considered with other competent evidence in determining
> whether the prescribing practitioner knowingly assisted a patient . . . in
> violation of subparagraph (a)1.

Contrary to Plaintiffs' assertions, however, Defendant appears to have acted precisely

in line with § 893.13(8)(b).  Defendant weighed the fact that Henson appeared to be

prescribing medications without medical necessity in light of other circumstantial

evidence.  In the course of her investigation, Defendant uncovered one of Henson's

---

[6]      Additionally, the Court has considered the remainder of Plaintiffs' Motion
to Strike, Motion for Leave of Court to File Sur-Reply, Motion to Strike Undisclosed
Discovery, and Motion to Reopen Discovery [DE 76], and finds the arguments therein to
be without merit.  Plaintiffs seek to strike the affidavits of several witnesses submitted
by Defendant in support of the instant Motion.  Plaintiffs allege that Defendant had not
previously disclosed these witnesses.  The Court notes, however, that these witnesses
were listed in Defendant's initial Rule 26 disclosures.  See DE 81-3 at 2-4.

patients who was prescribed drugs despite an MRI showing she was not injured, and at least two patients with extensive medical histories that clearly contraindicated the prescription of pain medication.  She then reasonably interpreted this evidence in view of other evidence she had found: two witnesses who said that SWI's primary motivation was monetary gain; Henson's offering to double patients' dosages of a highly addictive medication without apparent medical reason; and Henson's history at the Latin Quarter clinic.  The Court concludes that this is ample evidence for a reasonable law enforcement officer to believe that Henson was prescribing medication solely for pecuniary gain.

### 2. There was probable cause to arrest Eubanks for violation of Florida Statutes §893.13(8)(a)

Eubanks was arrested for violation of Florida Statutes § 893.13(8)(a), and the Arrest Affidavit states that there was probable cause to believe that she "did commit and/or aid and abet" in the violations.  See Arrest Aff. at 13.  In the instant Motion, Defendant argues that there was sufficient evidence to arrest Eubanks under an aiding and abetting theory.  To convict a criminal defendant as an aider and abettor, the State must show that she "(1) assisted the actual perpetrator by doing something that caused, encouraged, assisted, or incited the perpetrator to actually commit the crime; and (2) intended to participate in the crime." Parker v. State, 795 So. 2d 1096, 1099 (Fla. 4th DCA 2001).  These elements may be proved "by a combination of surrounding circumstances from which a jury can reasonably infer a defendant's guilt."  Id.

Here, Defendant had a significant amount of circumstantial evidence to support her finding of probable cause.  Defendant had evidence that Eubanks was the owner of

SWI and that she exercised a degree of control over the clinic's policies.  She was involved in patient management, getting upset when Dr. O'Rourke reduced patients' medication levels and when he suggested using drug testing and pill counts to monitor patients' drug usage.  <u>See</u> Carpenter Aff. at 104-113.  She was involved in ordering medication and she set Henson's salary, paying him more if he saw more patients.  <u>See</u> Freburger Aff. at 17; Def's Ex. L2, Criminal Trial Tr., pt. 2 [DE 64-17] at 300.  In short, Defendant had probable cause to believe that, if Henson were prescribing medication solely for monetary gain, then Eubanks had willfully set up the policies of SWI to encourage that behavior.

3. There was probable cause to arrest Eubanks for<br>violation of Florida Statutes §§ 465.015(1) and 465.015(2)(b)

Eubanks was also arrested for violations of Florida Statutes § 465.015(1), which prohibits operating a pharmacy without a license, and § 465.015(2)(b), which prohibits dispensing prescription medications without a license.  In making her probable cause determination, Defendant had four sources of evidence.  First, she learned from Sergio Lopez, the owner of Supra Medical Supplies Corp., that Jenny Soto — SWI's office manager — had been ordering prescription medications, at Eubanks's direction, while Henson's dispensing license was suspended.  <u>See</u> Freburger Aff. at 17.  Second, Dr. Romeu, in his interview with Defendant, described an incident in which he found a Drug Enforcement Agency (DEA) order form, which is used to order prescription drugs, with his name and DEA number on it.  <u>See</u> Carpenter Aff. at 62-64.  When he approached Soto about this, she said that she was following standard office procedure in ordering prescription medications.  <u>See</u> <u>id.</u>  Dr. Romeu immediately took the form from her

14

because it was improper for the clinic to order drugs in his name without his permission,

particularly because he was not a licensed dispensing physician.  See id.  Third, both

Dr. Romeu and Dr. O'Rourke voiced suspicion about a locked safe in SWI's office.

Both doctors were under the impression that the safe contained narcotics that were

being dispensed while Henson's dispensing license was suspended.  See id. at 93-94,

106-107.  Fourth, one of the patients, R.B., testified that she saw Eubanks sign

prescriptions without the permission or presence of a dispensing physician.  See id. at

41.

        These factors, taken collectively, were sufficient to create a reasonable belief in

Defendant's mind that Eubanks was committing the crimes alleged.  Therefore, the

Court concludes that there was probable cause to arrest Eubanks for violations of

Florida Statutes §§ 465.015(1) and 465.015(2)(b).

### C. The Presence of Probable Cause
### Bars Plaintiffs' State Law Claims

#### 1. Qualified Immunity

        In the state context, Florida Statutes § 768.28(9)(a) grants qualified immunity to

Florida state employees.  The statute provides, in pertinent part:

> No officer, employee, or agent of the state or of any of its subdivisions shall
> be held personally liable in tort or named as a party defendant in any action
> for any injury or damage suffered as a result of any act, event, or omission
> of action in the scope of her or his employment or function, unless such
> officer, employee, or agent acted in bad faith or with malicious purpose or in
> a manner exhibiting wanton and willful disregard of human rights, safety, or
> property . . . .

Fla. Stat. § 768.28(9)(a).  "The purpose of [this] qualified immunity . . . is to 'immunize

public employees from liability for ordinary negligence, while providing injured claimants

a remedy against governmental entities through the waiver of sovereign immunity.'" Lemay v. Kondrk, 860 So. 2d 1022, 1023 (Fla. 5th DCA 2003) (quoting Rupp v. Bryant, 417 So. 2d 658, 671 (Fla. 1982) (Boyd, J., dissenting)).

As applied to this case, § 768.28(9)(a) immunizes Defendant, a state employee, from suit and liability in tort as long as she acted within the scope of her employment, and did not act in bad faith, with malicious purpose, or in a manner exhibiting wanton disregard of human rights.  See Fla. Stat. § 768.28(9)(a); see also Willingham v. City of Orlando, 929 So. 2d 43, 48 (Fla. 5th DCA 2006) ("Importantly, the immunity provided by section 768.28(9)(a) is both an immunity from liability and an immunity from suit . . . ."). As discussed above, Defendant's actions as a Lieutenant in the Medicaid Fraud Control Unit, investigating Plaintiffs, interviewing witnesses, and filing an arrest affidavit fell within the scope of her employment.  See Hutton, 919 F.2d at 1537; Riebsame, 267 F. Supp. 2d at 1237.

However, Plaintiffs assert that Defendant's malicious purpose is evident in the fact that she coerced witnesses to testify falsely in their affidavits.  While only one witness at trial alleged that Defendant coerced him –- and, on redirect, admitted that his affidavit was nonetheless truthful — Plaintiffs claim that Defendant likely coerced other witnesses, as shown by the fact that they changed their testimony at trial.  See Criminal Trial Tr., part 1 [DE 64-16] at 40-44.  Having reviewed the criminal trial transcripts, the Court finds no evidence that any of the witnesses materially deviated from their affidavits at trial.  Plaintiffs further note that, under Florida law, "malice may be inferred from the absence of probable cause."  Colonial Stores, Inc. v. Scarbrough, 355 So. 2d 1181, 1185 (Fla. 1977).  However, as the Court finds that Defendant had at least

16

arguable probable cause, it follows that Plaintiffs have made no showing of malice.  The

Court therefore concludes that Defendant was immune from personal liability on the

state law claims.

### 2. Intentional Infliction of Emotional Distress

Furthermore, because probable cause existed, Plaintiffs cannot establish

Defendant's individual or officer liability for intentional infliction of emotional distress. To

prevail on a claim for intentional infliction of emotional distress under Florida law, a

party must show the following:

> (1) the wrongdoer's conduct was intentional or reckless, that is, he or she
> intended his or her behavior when he or she knew or should have known
> that emotional distress would likely result; (2) the conduct was
> outrageous, that is as to go beyond all bounds of decency, and to be
> regarded as odious and utterly intolerable in a civilized community; (3) the
> conduct caused emotional distress; and (4) the emotional distress was
> severe.

Saludes v. Republica de Cuba, 655 F. Supp. 2d 1290 (S.D. Fla. 2009) (citing Liberty

Mut. Ins. Co. v. Steadman, 968 So. 2d 592, 594 (Fla. 2nd DCA 2007)).  Here,

Defendant's conduct, in filing an arrest affidavit against Plaintiffs, was not outrageous

because there was probable cause to arrest Plaintiffs.  See Jessup v. Miami-Dade

Cnty., Case No. 08-21571-CIV-SEITZ/O'SULLIVAN, 2010 U.S. Dist. Lexis 22733,

at *36-37 (S.D. Fla.  Mar. 10, 2010).  Therefore, the Court will grant summary judgment

as to the claims for intentional infliction of emotional distress.

### 3.  Malicious Prosecution

Likewise, the existence of probable cause bars Plaintiffs' malicious prosecution

claims.  To prevail on a claim for malicious prosecution, a plaintiff must show:

(1) an original criminal or civil judicial proceeding against the present plaintiff was commenced or continued; (2) the present defendant was the legal cause of the original proceeding against the present plaintiff as the defendant in the original proceeding; (3) the termination of the original proceeding constituted a bona fide termination of that proceeding in favor of the present plaintiff; (4) there was an absence of probable cause for the original proceeding; (5) there was malice on the part of the present defendant; and (6) the plaintiff suffered damage as a result of the original proceeding.

Alamo Rent-A-Car, Inc. v. Mancusi, 632 So. 2d 1352, 1355 (Fla. 1994) (citations omitted).  Failure to establish any one of these elements is fatal to the claim.  See id.

Here, Plaintiffs' claims fail because, for the reasons already discussed, Plaintiffs have not established the absence of probable cause.  Therefore, the Court will grant summary judgment as to the malicious prosecution claims.

## IV.  CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** as follows:

1.     Defendant Carol Freburger's Motion for Summary Judgment [DE 62] is **GRANTED**;

2.     Plaintiffs' Motion to Strike, Motion for Leave of Court to File Sur-Reply, Motion to Strike Undisclosed Discovery, and Motion to Reopen Discovery [DE 76] is **DENIED**;

3.     Defendant's Motion in Limine [DE 83] is **DENIED as moot**;

4.     Plaintiff's Motion in Limine [DE 84] is **DENIED as moot**; and

5.     The Court will enter a separate Final Judgment consistent with this ruling.

**DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, on this 17th day of October, 2012.

JAMES I. COHN
United States District Judge

18

Copies provided to:
Counsel of record via CM/ECF